May it please the Court, I am Brian Smith and I represent Mr. Doyle Beck in this matter and I do bring you greetings from Southeast Idaho. The issue that we have today on our appeal, the first issue has to do with whether or not the trial court erred when we made our 50A motion and the court did not make a determination of whether the UFTA statute provided an equitable, excuse me, provided an adequate legal remedy to preclude application of the unjust enrichment cause of action. And I also objected to that same jury instruction 32A and then we made a 50B motion and a 50B and a 59E motion and what I was saying was, I was saying to the court, look, if they win on the UFTA claim, the unjust enrichment claim is irrelevant. If they don't win on the UFTA claim, which is exactly what happened, and I was concerned about that because they would essentially be getting two bites at the apple because UFTA represents 500 years of law and policy considerations and you would be giving the jury an opportunity to basically overrule themselves from what they did in UFTA and award the money under unjust enrichment. A number of states, you know, this is a uniform law and a number of, traditionally they're adopted pretty much without change and UFTA, as you call it, this Uniform Act has been adopted by a number of states. Our research suggests that there's only one case that has addressed this precise issue. I think it's from Minnesota. The Bame case? Yeah, that except your point of view, every other jurisdiction who's faced the issue has come out on the other side. Except in Idaho, the law is very clear that if you have an adequate legal remedy, you do not get to pursue an equitable cause of action. And in fact, the Idaho courts addressed this precise issue. Not in the context of UFTA, but in the context of other cases. Well, should we certify this question to the Idaho Supreme Court? I'll wait for your ruling first. I mean, I don't know how to answer that question, frankly. You seem to be very confident that this is the sort of underlying stream of the law in your home state. Why not? You know, when we certify a question, we tell the state Supreme Court, we don't know the answer to this. Our research suggests you haven't answered it yet. And we will be bound by its determinants of the case. You would agree with that? That this one issue is? Yes, it would be. Yeah. They came back and said, you're right. It's a different story. And we always agree to be bound by what they say. So why not do it? I think, and I'm not sure, because I'm not a procedural expert on certifications, but I think this court can also answer that question. Well, we can. But if we did, one of the things I would point out, and I would appreciate your comment on, is that the Minnesota statute, which, as Judge Hawkins points out, seems to be the only case that would go your way, really has very different language. And it doesn't have quite the same savings clause here, which permits you to have what you might call duplicate remedies, unless they're specifically, you know, nixed out by the statute. So why would we adopt the position of Minnesota, which doesn't track your statute, and reject all the other courts that have looked at it that have a more similar savings clause? OK. When you say saving clause, I think you're talking about what they refer to as the undisplaced language clause. That's the same language? Yes. We'll call it the undisplaced. Is that better? OK. And the reason for that, the reason you should do that is, is because in Mickelson versus Broadway-Ford, I happened to be the mediator in that case, so I followed it closely. But in that case, that dealt with the UCC case. And the UCC has nearly identical language on this undisplaced language clause, or what you call the savings clause. And in that case, the Supreme Court blew right past the savings clause and said, look, we're still going to say that because there is a statute like the UCC that provides an adequate legal remedy, we're not going to let you pursue your equitable claim. And that is the law in Idaho. And even the trial court judge in this case, he didn't disagree that the law in Idaho requires that you not pursue an equitable claim if you have a legal remedy that has an adequate legal remedy. He was with us on that. He didn't dispute that. The problem we have with the court's reasoning, and where we believe the court erred, is what he said was, is he said, UFTA may not always be an adequate legal remedy for unjust enrichment, therefore, the equitable claim could be considered by the jury. Well, we weren't talking about whether UFTA always had to be an adequate legal remedy in every case, we were talking about this case. And so he misunderstood how the rule applied. You don't have to apply it in every case, just this one. And given that UFTA gives remedies to, that are very, very broad. Well, I guess that's the question, isn't it, that the Idaho Supreme Court would have to decide. First of all, are any common law remedies preserved? And if so, are they completely abrogated by the Idaho legislature's enactment of the statute? I don't think that's the issue. It's not whether or not they're completely abrogated. So that's what they've done, is they've tried to change the issue. The rule in Idaho is, if you have an adequate legal remedy with a legal claim, you don't get to pursue an equitable claim. It doesn't have to displace it at all. That's the issue that's undecided, whether or not this is an adequate remedy that precludes equitable relief. And that's exactly the issue we're asking you to decide, and for me. Let me ask you a practical question. We're talking about $55,000 here that's an issue. If we certify this, you're going to have to rebrief it and argue it in the Idaho Supreme Court, assuming they accept our certified question, which they usually do, but they don't have to. And then you're going to get a decision there, and we'll probably follow it, but there may be yet another round of briefing and arguments in this court. You're going to be spending far more than $55,000 to get the answer to the legal issue. Do you really want us to do that? I would not. I've said at the beginning, I'd like you to answer this question. I would not like the case to be certified back to Idaho. Be clear today. We're ready to accept your judgment. So, up or down? You want us to? Oh, yeah. The cases need an end. There needs to be an end to them, and we'd be happy to have an end to it on this one. But on this specific UFTA issue, look at the remedies that UFTA provides. You can get a judgment. You can avoid a transfer. You can do attachment. You can appoint a receiver. You can get injunctive relief. And I love this one. Any other relief the circumstances may require. It is beyond comprehension to me that UFTA does not provide an adequate legal remedy. What they're upset about is, is they didn't recover under UFTA. And that is not an inadequate legal remedy. That's just you failed to prove your case under UFTA. And so, they clearly had an adequate legal remedy. They could have gotten a judgment for $55,000 under UFTA. But the reason they didn't is because the jury made a determination that Mr. Yost was an initial transferee. And UFTA distinguishes between investors, initial transferees, and what it found Mr. Beck to be as a subsequent transferee. The further you get away from the Ponzi scheme, you're able to keep money that can be traced to the Ponzi scheme. And so, that's the first issue, is this adequate legal remedy, and I'm really- But he wouldn't have gotten this $55,000 but for the Ponzi scheme, right? Well, he wouldn't have gotten the $55,000 but for his loan to Mr. Yost to begin with. The money could be traced to the Ponzi scheme, but that does not mean that the Ponzi scheme conferred a direct benefit on Mr. Beck. In fact, when the jury found that Mr. Yost was an initial transferee by virtue of the Ninth Circuit law, that meant he was free to spend that money however he chose. He was not under the direction of the Ponzi scheme. And so, the Ponzi scheme, it can be traced to him, but traced from the Ponzi scheme to Mr. Yost, to Mr. Beck, but it was Mr. Yost who had the free will and he was the one able to make that decision. That's why it is, in fact, Mr. Yost who conferred the benefit on Mr. Beck and not the Ponzi scheme. And their argument actually goes against the finding of the jury on that issue. I have to say, my head was spinning at the conclusion of the special verdict form. I was amazed the jury, you know, it was complicated. And you take the position that when you get to the bottom of all this, that the UFTA determination is legally irreconcilable with- Yes. Determination with respect to unjust enrichment. And I would appreciate if you would enlighten us on your theory on that. Okay, thank you for asking that question. There are investors, there are initial transferees, and subsequent transferees. And UFTA provides a defense to subsequent transferees that investors and initial transferees do not get. And the reason is, is because subsequent transferees do not deal with the initial wrongdoer. They're further down the food chain, so to speak. And so, under the UFTA law, if you're a subsequent transferee, even if you get money back, if you acted in good faith and you provided value, you still get to keep what you got. And so, in this case, when the jury determined that Mr. Beck, that Mr. Yost was an initial transferee, they therefore necessarily found that Mr. Beck was a subsequent transferee. They also found, as a matter of fact, that he acted in good faith, which means he had not even inquiry notice that this was somehow tainted money. And he gave value. They made those findings. And so, once you have a conclusion that Mr. Beck acted in good faith and gave value, it's inconceivable that it could be unjust. Well, not if the jury decided that he got another 50,000 back and in Idaho, the interest rate is 12%. So, in essence, what we have here is a compromise verdict, where the jury gave him some, but not all of the interest money. And that is a great point, because that is exactly what they did. Well, pretty much what they did. It looks to me like that. What they did was, they said, here's what the part you don't know is, is they brought in several witnesses who got up on the stand, talking about how they'd been wiped out of their savings. This was their strategy. Let's make them feel sorry, because Mr. Beck got 55,000 for interest. Whereas there was Mr. Hillam from Shelly, who lost everything he had, millions. So the jury's looking at this, and they go through the OOPDA statute, and they say, well, he's a subsequent transferee. And they don't realize all the policy behind the rule. Then they say, he acted in good faith, and he gave value. But you know, we got this unjust enrichment jury instruction. It's so unfortunate that Mr. Beck, he got all of his principal back, plus his interest, and some of these people got completely wiped out. So we'll just go ahead and say he gets the interest. That is a compromise verdict, and that's why it shouldn't have been presented. It also does some equity, doesn't it? Pardon me? We also call that equity, don't we? The reason it's not equitable is Mr. Beck is not an investor, and he was not an initial transferee. Had he been either one of those, then it would be fair. But they are comparing people who invested in Trigon and had an opportunity to discover the fraud, and do their own due diligence, with a man who never even heard of Trigon. That is why it's not equitable. And what they really did is exactly what you suggested, is they came up with a compromise. That's why I objected, and I said, look, if Mr. Beck is held not liable under OOPDA, he shouldn't have any liability. And the judge said, this is a close question. So he let it go to the jury, and as often happens after the jury ruled, then he didn't change it. That's what happened. Did you want to reserve time for a rebuttal? Yes, I would. Thank you. All right. Good morning. Morning. May it please the court. Good morning. Just to address a couple of issues that were raised in questions. In response to counsel's statement that we had witnesses testify to garner up special concessions from the jury, that's just simply not the case. Those witnesses testified to establish that Mr. Yost was in bad faith, which they found. The brother-in-law was in bad faith. That was the same person that Mr. Beck made his loan to. In terms of the jury instruction that was actually provided to the jury on unjust enrichment, no one has ever argued that that was not an accurate statement of Idaho law. It's the jury instruction 6.072 taken from the Idaho jury instructions. It's taken specifically from several Idaho cases, including Aberdeen and Vanderfoot, which we've cited in our brief. The special verdict form that was provided to the jury, it had a Uniform Fraud and Transfer Act section. It also had a special verdict form dealing simply with unjust enrichment. But Mr. Kurtz, wouldn't you agree that if, as a matter of law, Mr. Smith is right that there is no common law right of unjust enrichment recovery, because it was abrogated by the Uniform Fraudulent Transfer Conveyances Act, that the instruction should never have been given? Well, that's the argument, but that's not the case in Idaho, for the reasons that I'll discuss. Right. I mean, if we agree that it doesn't abrogate it, then the instruction is appropriate, which I suspect is why there was no objection to it. Well, there was an objection. If there was an objection to what the law really was of unjust enrichment, they would have also been appropriate to have made an objection that the jury instruction itself was not correct. There was no objection to the form of the instruction, assuming that, as a matter of law, the claim remained. That's right, Your Honor. That's right. So then the special verdict form tracked the Idaho jury instruction, and the very first question that was asked was, did the receiver prove by a preponderance of the evidence that Trigon provided a benefit to Mr. Beck? And I point that out, because most of the arguments that are made here is that the jury didn't find that, or that they found something different because they found, under the Uniform Fraudulent Transfer Act provision, a special verdict form, that he was an initial transferee. I don't know how you can say the jury didn't find that the receiver did not prove by, I don't see how you can determine that the receiver did not prove by a preponderance of the evidence that Trigon provided a benefit to Mr. Beck when a jury specifically answered that question, yes. As well as the other two questions, which were, did the receiver prove by a preponderance of the evidence that Mr. Beck accepted the benefit? And did the receiver prove by a preponderance of evidence that, under the circumstances, it would be unjust for Mr. Beck to retain the benefit without compensating the receiver for the value? So going back to what probably will determine the outcome of the case, and that is whether or not the dual claims are available under Idaho law, he cites to the Mickelson case, and a UCC analog, says that, in effect, when you have this Uniform Fraudulent Transfer, it's not unlike what happened in the UCC, which displaces certain common law remedies. And since it's really the same remedy, it's the same set of facts, same remedy, he says unjust enrichment is not available. What is your answer to that? Well, you need to read the Mickelson case carefully, because what they're referring to are specific Uniform Commercial Code sections, where our Supreme Court actually said, in the code itself, they had codified the rescission remedy in the code itself, and therefore it became a legal standard. So you don't look to the common law in that situation for another alternative rescission remedy. That's all the court said there. And that case just is really not on point to what we're dealing here. I think what's really on point are the Idaho cases, the numerous Idaho cases, including, as the court already pointed out, all of the jurisdictions that have addressed this issue have gone in our favor, except for Minnesota. And in the eighth circuit, they even sent it back to remand to the district court. And it's pretty clear from the cases that they cited that Minnesota has essentially gutted unjust enrichment in that state. But in Idaho, I think the key cases to look to are many that we've cited in our case that deal with the issue of a breach contract case, where the Idaho Supreme Court has said, if you have a valid contract claim, then you're not also entitled to an alternative equitable remedy of unjust enrichment. So the issue has come up in a number of Idaho cases. Well, if there is a contract claim in the case, can you also alternatively plead an unjust enrichment claim? And the Idaho Supreme Court has said on numerous occasions, absolutely you can. That is the law. In fact, the Ninth Circuit adopted that as Idaho law in the Tomlinson case. And the reason why they're doing that is they're saying, if you do prove that there is a contract and that it has been breached and there is an adequate remedy at law, then you don't get the alternative equitable remedy. And that makes sense. Your position here is there's no contract between Beck and Trigon. No, there was never an allegation of a contract between Beck and Trigon. There were two claims that were brought against them. One was the Uniform Fraud and Transfer Act claim, and the other one was the unjust enrichment. Unjust enrichment. But the point is, when Idaho Supreme Court has been asked to look at a clear situation where an equitable remedy would be precluded if you had a valid legal claim, that is the breach of contract cases, they've said, you can plead alternatively. And you can go forward even if you're not successful in proving your breach of contract claim. To me, that's directly on point to this situation. I mean, there is no need for you to go back to the Idaho Supreme Court. You know what their theory is on this. So Beck successfully defended the fraudulent transfer claim by showing that he had no knowledge and he was completely uninvolved in the Ponzi scheme. It was just an arrangement he had with Yost to loan him money. And so the jury could still find under the unjust enrichment claim that 12% interest was enough on that loan where they had all these other victims. Well, that's absolutely right. And what the jury did is heard a lot of evidence that clearly supports the unjust enrichment claim. I mean, so, and obviously that was what they decided. In essence, what Beck is asking the court to do is to essentially eliminate a claim for unjust enrichment under Idaho law and federal courts in the Ninth Circuit. If there is any other similar potential claim that could potentially be alleged, even if the other claim is not one that the plaintiff can prevail on. And that's just not simply, that's simply not the law in Idaho as shown by those contract cases and a number of other cases that we've cited. We've cited the canons of construction in our brief, which clearly all indicate that you need to be clear that you intend to eliminate the right to common law. There's nothing in the Idaho Statute, Uniform Fraud and Transfer Act, that does that. And as the court already pointed out, there is the clause at the very beginning of it, where the court recognizes that the anti-displacement clause appears in the UFTA in Idaho. The Ninth Circuit, in the ECEQA case that we cited in our brief, concluded that under Idaho law, you could have an alternative theory of Uniform Fraud and Transfer Act claim. So that's another Ninth Circuit case that has recognized the ability to have these two claims being asserted in the same case. Again, as we discussed, I discussed previously in the contract cases, there's the Thomas case, the Bates case, the Vanderfoot case, and all of which, the Tankersley case, all cases in which the Idaho Supreme Court has recognized that you can plead alternatively a breach contract claim and a unjust enrichment claim. And it's only until you prove the breach of contract claim that the unjust enrichment claim goes away. Which is what actually happened in our case. Once the Uniform Fraud and Transfer case came away, the unjust enrichment claim clearly became available. With respect to Mr. Beck's other arguments, he's argued that he was a bona fide a purchase for value because he made a loan of $500,000 to Yost. And because Idaho law allows a 12% interest rate, he should have been entitled to receive the money. As we pointed out in our brief, those arguments were not made at the Rule 58A stage. They were brought as Rule 59E arguments. They're not appropriately brought as those arguments. But if you were to review it, you have to review it under a plain error standard or a manifest miscarriage of justice standard. With respect to the bona fide a purchaser argument, Beck purchased the right to be repaid from the creditworthiness of Duane Yost. That's what he bought. However, that is not what occurred. Instead, Beck received $555,000 that was traced as coming from the Trigon accounts. Those payments were made because Darren Palmer erroneously believed that Beck had been an investor. As a result, Beck was paid with the money of innocent investors in the Trigon Ponzi scheme. With regard to the statutory rate argument, it's true Idaho has a 12% interest rate. But I think as the court pointed out, Beck received $104,000, $5,000, which is a 20% return. And so the question is, is that a manifest injustice? That he only received a 10% return on his $500,000 submission, on his $500,000 loan that he made? I submit not. Your Honors, the only real injustice here is that Beck, who made a $500,000 loan at a 20% interest to Yost, based on Yost's creditworthiness, which Beck never bothered to, or Beck never bothered to even conduct the reasonable investigation into that creditworthiness, was repaid $605,000, $555,000 of which was clearly shown to have come from Trigon, and another $50,000 of which came from another person who gave the money to Yost for the specific purposes of putting it into Trigon. It's the innocent investors that were ones that were harmed here. There is no injustice to Mr. Beck on an unjust enrichment theory. I'd be happy to answer any questions. Thank you very much. Thank you. You have some rebuttal time. The law in Idaho is very clear that if you have an adequate legal remedy, you cannot pursue an equitable claim. The judge in this case was unable to say why. He gave no reasons why UFTDA provided no adequate legal remedy. And despite the argument we just heard, and all due respect to my good friend, Mr. Kurtz, he never said why UFTDA is inadequate. Instead, they're trying to reframe the issue and say, oh, you're trying to displace all of unjust enrichment law. That is not what we're saying. We're saying that this is an adequate legal remedy in this case under UFTDA. There's no reason why you couldn't have gotten an adequate legal remedy under these facts in this case, held to just this case, not all cases across the board. I would also like just to point out that it's when he raises this issue about the benefit that Trigon conferred on Mr. Beck. The jury made a specific finding that Mr. Yost was an initial transferee. As I stated before, that means that he was free to spend his money as he wanted to. He did not have any influence by Trigon. When Trigon paid the money to Mr. Yost, they conferred a benefit on Mr. Yost. And it was Mr. Yost who conferred the benefit. And that's why the unjust enrichment judgment or verdict is at odds with what happened for the UFTDA claim. And my last point simply is that what really did happen was that the jury heard this about these people who lost money and they looked at Mr. Beck and they weren't analyzing it as, they treated Mr. Beck as the same as everybody else who lost money or made money. When in fact, he's a subsequent transferee, not an investor, not an initial transferee. And if we want commerce to work, if we want people not to be afraid to take money and to engage in commerce as a subsequent transferee, we need to have a rule that does treat him differently than people who dealt directly with Trigon and Darren Palmer. And that's what UFTDA does. Over 500 years, it's developed this law that takes these different situations into account. The jury didn't do that with unjust enrichment. And instead, they entered a verdict that was inconsistent with their findings specifically with respect to conferring a direct benefit and whether or not Mr. Beck was somehow unjustly enriched when, in fact, he acted in good faith. But it's not inconsistent with the instructions that they were given on unjust enrichment, is it? I mean, we're back to the same problem of if the claims are properly split, if both are cognizable, then the jury was properly instructed on the elements of unjust enrichment, and the evidence supports that verdict. So this case really turns or falls on the legal question. It is. It's purely a legal question. And that's why we're here. Okay. All right. Thank you. Thank you. We accept your invitation to look at the case and then decide whether or not to decide it or send it back to Idaho. We appreciate arguments from both counsel. The case of Deck versus, I mean, excuse me, the earlier one of Klein versus Beck. We have a Deck one next. The Klein versus Beck is submitted. Thank you.
judges: Hawkins, McKeown, Tallman